## APPEAL OF FURST BROS. & CO.

Docket No. 3362.    Submitted July 7, 1925.    Decided October 21, 1925.

*Charles H. Schnepfe, Jr., C. P. A.*, for the taxpayer.
*J. Arthur Adams, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, GREEN, and LOVE.

This appeal is from the determination of a deficiency in income and profits taxes for the fiscal year ended June 30, 1921, in the amount of $2,221.60. The deficiency arises from the elimination by the Commissioner from invested capital of certain values claimed by the taxpayer for property acquired by it at the time of its organization.

## FINDINGS OF FACT.

1. The taxpayer is a Maryland corporation organized June 17, 1920, for the purpose of purchasing the business of Furst Bros. & Co., a sole proprietorship, as of June 30, 1920. Furst Bros. & Co. had been conducted as a sole proprietorship for many years by one Max Nusbaum, who died during April, 1920. It was thereafter operated by the administrator, Arthur L. Nusbaum, his son, until June 30, 1921, at which time it was sold to the taxpayer, of which the said son was president. The taxpayer corporation was organized with an authorized capitalization of 3,000 shares of preferred stock, par value $100 each, and 3,000 shares of common stock, no par value. Of the preferred stock, approximately 2,500 shares were issued as follows: 1,030 for the assets of the business, 270 shares for cash received on insurance on the life of Max Nusbaum, 450 for insurance money received from the widow, 450 to creditors of the deceased, and the remainder to various investors, all at par value. The no-par value common stock was distributed as follows: 1,300 to Arthur L. Nusbaum, son; 1,200 to widow, and the balance to various preferred stockholders. No value was set up on the books of the taxpayer for this common stock.

2. In his determination of the value of the assets acquired by the taxpayer in exchange for stock at the date of its incorporation, the Commissioner adopted the figures set up on the books of the predecessor business. Based on its own appraisal, the taxpayer set up appreciated values on its books and its opening balance sheet in respect of certain of the properties acquired for stock issued at date of organization.

The assets and liabilities as set up on the books of the predecessor, and upon the books of the taxpayer and as revised by the Commissioner, as of June 30, 1920, are as follows:

| | Predecessor. | Taxpayer. | Commissioner. |
|---|---|---|---|
| **ASSETS.** | | | |
| Cash | $8,879.08 | $12,439.08 | $12,503.25 |
| Accounts receivable | 67,409.81 | 77,294.96 | 77,294.96 |
| Notes receivable | 2,666.90 | 2,666.90 | 2,666.90 |
| Inventories | 95,405.14 | 107,613.30 | 107,613.30 |
| Investments | | 5,359.27 | 5,359.27 |
| Organization expenses | | | 1,500.00 |
| Land [1] | 60,261.44 | { 35,825.00 | { 15,000.00 |
| Buildings [1] | | { 105,062.98 | { 45,261.44 |
| Machinery and equipment [1] | 31,995.27 | 68,154.48 | 32,025.27 |
| Hanover Street R. & E.[1] | | 1,600.00 | |
| Philadelphia furniture and fixtures | | 945.77 | 945.77 |
| Automobile | 1,000.00 | | 1,000.00 |
| Furniture and fixtures | 2,270.00 | | 2,270.00 |
| Trunks | 300.00 | | 300.00 |
| Models and molds | 4,387.78 | | 4,387.78 |
| Liberty bonds and war-savings stamps | 4,889.94 | | |
| Furst Lumber Co | 67,112.94 | | |
| Deferred charges | 1,696.57 | | |
| Total | 348,274.87 | 416,961.74 | 308,127.94 |

[1] Items in controversy.

|  | Predecessor. | Taxpayer. | Commissioner. |
|---|---|---|---|
| LIABILITIES. |  |  |  |
| Accounts payable | $33,453.58 | $19,937.18 | $19,937.18 |
| Notes payable | 171,073.50 | 78,490.00 | 78,490.00 |
| Mortgages [1] | 24,000.00 | 35,333.33 | 35,333.33 |
| Colonial Trust Co | | 2,500.00 | 2,500.00 |
| Reserve for taxes | | 4,000.00 | 4,000.00 |
| Deferred commission | | 1,468.62 | 1,468.62 |
| Philadelphia branch accounts | | 2,288.34 | 2,288.34 |
| Capital stock | | 236,300.00 | 236,300.00 |
| Capital—Max Nusbaum | 101,458.95 | | |
| Reserve for depreciation | 18,288.74 | | 18,288.74 |
| Surplus | | 36,644.27 | 90,478.27 |
| Total | 348,274.87 | 416,961.74 | 308,127.94 |

[1] Items in controversy.

The taxpayer increased the values of the predecessor as follows:

| | |
|---|---|
| Land | $20,825.00 |
| Buildings | 59,801.54 |
| Machinery and equipment | 36,129.21 |
| Hanover Street R. & E | 1,600.00 |
| Total | 118,355.75 |

3. The taxpayer fixed the values in the following manner: Arthur L. Nusbaum, president, and William A. Hall, vice president and treasurer, met informally and called in one Pearson, a contractor and builder who had built the original buildings. Acting on the latter's estimate of the values, they set up on the books values of the land, buildings, machinery, and equipment as above set forth. The Commissioner refused to accept these values, and set up the values as shown on the books of the predecessor company and as returned for Federal estate tax of Max Nusbaum. These values represented the cost of acquisition by the previous owner.

4. The Commissioner, however, omitted three minor items as assets as follows: (a) He accepted the value on the books of the predecessor for land and buildings, but the books of the predecessor did not show a certain mortgage of $5,000 assumed by the predecessor and the taxpayer. The predecessor on September 1, 1911, purchased a parcel of real estate for $7,109. It paid $2,109 cash and assumed a mortgage for $5,000. On its books it carried this asset at $2,109, but did not show as a liability the said mortgage for $5,000. The taxpayer corporation, however, did include this mortgage under its liabilities. (b) Similarly, the predecessor purchased another parcel of real estate for $4,656.13, for which it paid $2,656.13 and assumed a mortgage for $2,000. The books of the previous owner carried the value at $2,656.13, but did not show the mortgage of $2,000. This mortgage, however, was included under mortgages by the taxpayer on its books. (c) The books of the taxpayer corporation also carried, under mortgages, $4,333.33 as a lia-

bility for ground rent, which amount was not on the books of the predecessor. The inclusion of this amount by the taxpayer under mortgages was probably erroneous, but, in so far as the errors hereinafter set forth are concerned, it is immaterial.

The error of the Commissioner lies in the fact that he accepted under liabilities the amount set up on the books of the taxpayer, which included the above amounts, to wit, $5,000, $2,000, and $4,333.33, or a total of $11,333.33, but did not include them under assets in the value of real estate. In other words, he took as assets the valuation of the predecessor for land and buildings—$15,000 plus $45,261.44, or $60,261.44—which did not include these mortgages and ground rent, totaling $11,333.33, but also took the amount of the mortgages under liabilities set up by the new corporation which did include these extra liabilities, amounting to $11,333.33.

5. The predecessor company carried on its books under assets "Furst Lumber Co., $67,112.94." This represented money put into 102,000 acres of timberland in San Domingo, of which 18,000 acres were in fee and the remainder in timber rights. The deed to the San Domingo property was in the name of the Maryland Land & Timber Co., owned by the taxpayer. The taxpayer paid $400 or $500 as interest on bonds and franchise taxes in the State of Delaware. The taxpayer set up on its books a nominal value of $1 for this land and has made no claim for invested capital on this asset.

DECISION.

The taxpayer's invested capital should be increased in the amount of $11,333.33 and the tax computed accordingly. Final determination will be settled on consent or on 10 days' notice, under Rule 50.